Christian, J.
This is an appeal from a decree of the corporation court of Alexandria. The object of the suit was to compel the appellee, Mrs. Virginia Young, to bring into hotchpot an alleged advancement made to her by her father, John T. Evans, in his lifetime, of the sum of about $14¿000.
' John T. Evans died intestate in the year 1875, seized *85 and possessed of real estate of considerable value, and of a large personal estate amounting to at least $100,000. He left surviving Mm three children, Mary C., who intermarried with D. S. Watkins, and Maria, who intermarried with John Ellis, and the appellee here, Mrs. Virginia Young. The bill was filed by WatMns and wife and Ellis and wife, in which they allege that the said John T. EVans, during his lifetime, made large advances out of his personal estate to his said daughter, Virginia Young; that on the 20th February, 1872, he gave to her fifty shares of the capital stock of the Citizens National Bank of Alexandria, and on the 1st of March, 1872, he gave to her eighty-five shares of the capital stock of the First National Bank of Alexandria; that the value of the Citizens National Bank stock at the date of said gift was not less than $5,000, and the value of the First National Bank stock, at the date of said gift, was not less than $10,000, and that this property was given to and received by the said Virginia Young by way of advancements to her.
The bill after alleging that the debts of the decedent are small and few, and that the personal estate is now ready for distribution, prays that a distribution of said personal estate may be made, and that the said Virginia Young may be required to bring into hotchpot the advancements made to her as aforesaid; and there is a prayer for general relief, and that the defendants, Evans’ administrator and the said Virginia Young, may answer all the allegations of the bill on their several corporal oaths.
This bill was filed on 20th October, 1876; and on the 6th December, 1876, Mrs. Young filed her sworn answer, responding to the allegations of the plaintiffs’ bill, as follows:
This respondent, for answer to the complainants’ *86 bill, or to so much, thereof as she is advised it is material for her to answer, answers and says, as follows:
1st. This respondent denies the truth of the allegations in the said bill contained, to7wit: that the respondent ever received an advancement from her late father during his lifetime.
2nd. The respondent admits that her late father, during his lifetime, did assign to her fifty shares of the capital stock of the Citizens National Bank of Alexandria, Virginia, and eighty-five shares of the capital stock of the First National Bank of Alexandria, Virginia, and that she has from the date of said assignment held the certificates of said stock as her own absolute property.
3rd. But this respondent saith that such assignment was not an advancement, but that it was made upon good and meritorious consideration recognized and acknowledged by her late father, and that the said assignment when made to the respondent was so done as an absolute gift, in fulfilment of his repeated promises, based upon the good and meritorious consideration aforesaid.
And this defendant, having fully answered the said bill of complaint, prays to be hence dismissed with her reasonable costs in this behalf sustained. And ■she will ever pray, &c.
To this answer the plaintiffs excepted because it does not set forth the facts which constitute “the good and meritorious consideration ” upon which it is said the certificates of stock in the bill mentioned were assigned to her.
This exception was sustained by the court, and it ■was ordered “ that the- defendant, Virginia Young, on or before the first day of the next term, do answer and set forth the facts which constitute the good and *87 meritorious consideration upon which, the certificates of stock are alleged to have been assigned to her.”
In obedience to this order of the court Mrs. filed her amended answer, in which, after repeating what she had affirmed in her original answer, declares:
This defendant further answers, and says, that there were divers good reasons for this gift from her late father, and that the defendant should have this said gift without any reference to the distribution of her father’s estate at the time of his death.
This defendant was a dutiful and faithful child, whose conduct and deportment was a comfort and consolation to her father; and in this particular there was a difference between her and the other children.
The defendant further says that she was living in the country comfortably, when her late father told her that if she would break up housekeeping and come to the city of Alexandria and take care of his father-in-law, who was imbecile from old age, and Miss Carrie Hewitt, who was insane, that he would reward her well. At his request, and upon this assurance, the defendant broke up her housekeeping in Fairfax county at great inconvenience and loss, and came to Alexandria and nursed and cared for the imbecile old gentleman and the insane lady for more than two years. The defendant states these facts in order to show that there were good and sufficient reasons for the declarations made by her late father at the time of the assignment and delivery of the stock, that. he assigned it to .her absolutely, and not by way of an advancement. And the defendant says that the stock given to her by her father was intended by him, and so declared at the time, to be an absolute gift, and not by way of advancement.
To this amended answer the plaintiffs filed a general replication, and the whole issue made by the *88 pleading and passed upon by the court below was whether the stock transferred and assigned to Mrs. by her father in his lifetime was intended as an advancement to her, for which she was to account ■tioned, was not by way of advancement, but was an absolute gift to her; and the plaintiffs’ bill was accordingly dismissed. on the distribution of his estate, or whether it was an absolute gift to her. Upon this issue all the depositions were taken, and the case coming on to be heard on the bill, amended answer and depositions, with certain admitted statements of the cashier of the Citizens Eational Bank and' the cashier of the First national Bank of Alexandria read as evidence by agreement of counsel, the said corporation court was of opinion that the transfer of stock to the defendant, Virginia Young, in the bill and proceedings men-
From this decree an appeal was allowed by one of the judges of this court.
I am of opinion that there is no error in this decree.
Questions of advancement are always questions of intention, and the difficulties of solving them are generally found in the kind of evidence by which such intention is to be proved.
In some of the states it is held that a' gift of any considerable amount is prima facie an advancement, and is to be treated, in case the party to whom the advancement was made comes in for a distributive share, as a debt due from him to the estate. Grattan v. Grattan et al., 18 Ill. R. 170; 11 John. R. 91; 16 Mass. R. 200. In other states it has been held that the mere gift, unexplained, by father to child, does not make even a prima facie case in favor of an advancement; but that there must be evidence of intention, to treat it as an advancement, beyond the unexplained act. The mere gift furnishes no prima *89 facie case of an intention to constitute an advancement. Johnson v. Belden, 20 Conn. B. 322; Hatch v. Straight, 3 Conn. R. 31; 2 Pick. R. 337; 10 Paige’s Ch. R. 618.
But -whatever conflict may seem to exist on this question, all the cases agree that a gift in the lifetime of the intestate, unexplained, is only a presumption in favor of an advancement, and makes only a prima facie case, which, with the legal presumption, may be rebutted by evidence.
In the case before us it is clearly proved by disinterested and unimpeaehed witnesses that the gift by her father to Mrs. Young was not made by way of advancement, but as an absolute gift, independent of her right .to share in the distribution of his estate. It is proved that he had a motive for making this discrimination in favor of this daughter. He was a man of wealth, his personal estate "being worth at least $100,000. She was 'a widow, while his other two daughters were married. She was evidently his favorite child. He said of her to one witness: “ She has done a great deal for me; indeed, she has done more than any one could have done for me, and is the only -child I have that has given me any comfort.” Surely the father had a right to dispose of his own as he thought proper, and the gift of $13,500, as he estimates the value of the stock assigned to his widowed daughter, was not, out of personal estate worth $100,000, an unreasonable gift to a dutiful and favorite daughter, who he declares was the only child he had who had given him any comfort. He repeatedly declared that this gift was independent of what Mrs. Young would be entitled to at his death. This declaration was made certainly to three witnesses who are disinterested and unimpeached. It is well settled *90 that the declarations of the decedent made at the time and subsequent to the gift may be given in evidence to show that the gift was not made as an advancement, but as an absolute gift, and vice versa. 'Whether the gift was an advancement or an absolute gift being a question of intention, the declarations of the donor made at the time or subsequently is competent evidence to show such intention. 19 Mary. R. 332; 23 Penn. Sta. R. 85; 29 Ind. R. 249; 20 Cow. R. 322; 16 Geo. R. 16; 23 Cow. R. 516; 16 Mass. R. 108; 4 Abbott’s P. R. 5; 2 Phil. Ev., Cowan & Hill’s Notes, ed. 1859, p. 705.
But the evidence further conclusively shows not only that the decedent recognized Mrs. Young as a faithful, dutiful daughter, in whom alone (as he expressed it) of all his children he had any comfort, and therefore designed to give to her a larger portion of his estate than his other children; hut it is proved that there were special considerations which induced him to make her this gift by way of compensation for services rendered. In her answer Mrs. Young says (and it is uncontradicted by a single witness, except as to the precise period during which services were rendered to Miss Carrie Hewitt) “ that she was living in the country comfortably, when her late father told her that if she would break up housekeeping and come to the city of Alexandria and take care of his father-in-law, who was imbecile from old age, and Miss Carrie Hewitt, who was insane, that he would reward her well. At his request and upon this assurance she broke up her housekeeping in Fairfax county, at great inconvenience and loss, and came to Alexandria and nursed and cared for the imbecile old gentleman and the insane lady for more than two years.”
• It is proved beyond all question or doubt that her father recognized these services, which she engaged to *91 perform, and did perform up to the death of the parties named, as in part, if not in full, consideration of his act in assigning to her the stock referred to.
One witness (Mrs. Mary E. ’Williams)-says: “ I had a conversation with him (Mr. Evans) in reference-to the stock. He said he had given it to her (Mrs. Young) for her services. To use his own words, that ■ he had paid her for waiting on Carrie Hewitt and grandfather—that was Mr. Blue, who was living at that time. He said he had given it to her to pay her for her services, and that it was to he independent of anything she would get at his death.”
To another witness (Miss Jane Smith) Evans said, speaking of this gift to Mrs. Young: “She left her home and came and attended to mine—attended to Miss Carrie—and she is kind to Grandpa Blue; that I gave her this bank stock for services she rendered to others. She has done a great deal for me; indeed, she has done more than any one could have done for me, and is the only child I have that has given me any comfort. I said: ‘ Mr. Evans, how much have you given Mrs. Young?’ He said he had given her so much of one portion (of stock) and so much.of another portion, the whole amounting to §13,500; that (he said) I have given her- in her own name, independent of what she shall have at my death—that is hire-money, and she can do as she pleases with it. She earned it, and I have paid her.”
To another witness (Miss Lizzie Cannon), speaking of this gift to Mrs. Young, Evans said : “ She is a good, deserving girl, and she has earned it. He also said this was to be independent of what she would have when he died. He- also said he had made it over in her name for spending-money, to do as she liked with. He told me this was for services rendered him in taking care of Miss Carrie and Grandpa Blue,. and-.that he wanted Mrs. *92 Young to remain with him as long as he lived, for he could not get along without her.”
This positive evidence.of three witnesses is confirmed (if confirmation were necessary) by the statements admitted, by agreement of counsel, of the cashiers of the Citizens Bank and . First National Bank of Alexandria, showing that the stock held by Evans in said banks, respectively, had been transferred on the books, by him, to Mrs. Virginia Young, and the dividends paid to her; one of them stating that at the time of the transfer in the Citizens Bank Evans remarked “ he had given the stock to Jenny”—meaning his daughter, Mrs. Young.
To the sworn answer of Mrs. Young, sustained by the evidence of these five witnesses, so positive and conclusive, we have opposed but the testimony of one witness—and he is the son of one of the plaintiffs—who has the deepest interest in proving that this gift of between thirteen and fourteen thousand dollars was intended as an advancement. He testifies to transactions and declarations 'occurring w7hen he. was a mere boy, and altogether, if the utmost credit is given to his evidence,.it cannot outweigh the testimonj of five witnesses and the sivorn answer of Mrs. Young, to all of which it is a positive contradiction. The answer is sustained by the overwhelming proof in the cause, and cannot.be overthrown by the vague and uncertain statements of a single wfitness, and must therefore stand as true.
It has been -urged, however, that the amount given was altogether disproportionate to the service's rendered; that the insane lady died a few months after the services began, and that the imhecile old man, known as Grandpa Blue, lived only two years after' Mrs. Young’s services commenced.
But surely it is not for this court to place any limit upon the liberality or generosity of a father’ of affluent *93 means and large wealth towards a loved and favorite daughter, of whom he said: “ She was the only child who had given him any comfort.” It is not for us to say what compensation is just and fair. He had a right to fix that compensation. He was dealing with his own property and with his own favorite child, towards whom he had a right to be liberal and generous. But considering his estate and the circumstances of the case it was not an unreasonable gift to his daughter. His personal estate alone was valued at at least $100,000. It was held in Pennsylvania that a gift to a son (where the three other children were married daughters) of $2,500 out of an estate of $25,000 was not an extravagant provision for the son. 23 Penn. St. R. 87, Lawson’s appeal. Surely thirteen or fourteen thousand, under the circumstances of this case, was not an extravagant or unreasonable allowance. It is true the insane lady whom Mrs. Young left her home to attend and nurse, together with the imbecile old man, died very soon after her services commenced. But she might have lived for many years—no one could tell how long. Mr. Blue, the imbecile father-in-law, in his dotage, blind and helpless, and who had to be attended to as a child, did live for two years. Was the compensation unreasonable under the circumstances? But who shall limit the compensation which a father chose to give of his own to his own child ? If he chose to be generous and liberal towards his own favorite child, who has authority to gainsay or limit such generosity ? Certainly this court has no such authority. I fully concur with the court below in the opinion, expressed in the decree, “ that the transfer of the stock of the First National Bank of Alexandria and of the stock of the Citizens National Bank of Alexandria, in the bill and proceedings mentioned, to the defendant, Virginia Young, was not by way of advancément to her,” for which she has to account to the other heirs in the distri *94 button - of her- father’s estate, and that the- court below ( was right in dismissing'the plaintiffs’bill.' ■ ' ■'
It has been suggested, though not stated as-ground of error, in the petition of appeal, that the decree was prémature, and that the matter ought to have been, referred-to a commissioner of the court for inquiry, and account. I can conceive-of no reason why an account should have been ordered in this-case. There was but one issue, and that distinctly made by the bill, the amended answer, and replication thereto; 'and that single issue was whether the assignment of the stock-in the bill and proceedings mentioned was an advancement to Mrs. Young or an absolute gift to-her'by way of compensation for services rendered. All the depositions were taken with reference to this issue. -(Nobody asked for an account; but this sole question was submitted to the court and decided. • This court has held in- Lee County v. Fulkerson, 21 Gratt. 182, that a court of equity will not 'decree an account for the purpose- of furnishing evidence in support of the allegations of a bill. Judge Staples, delivering the unanimous opinion of the court in -that case, said; “-This - court has repeatedly decided that an account should not be ordered in any case unless shown to be proper and necessary by the pleadings and -proofs in the cause.” - - - ' ■
. Surely it cannot be said that-there is anything in the pleadings and proofs in this cause to make an account, proper aucl.necessary.- In 2 Rob. Pract. (old), p. 359, the learned'author says;-' “In (Virginia nothing in-cha'ncery practice, has been productive' of so much mischief as orders of account -unwisely made. ' Gases '-have frequently arisen in which, if a particular point were determined one way, an account would be. proper; -if- deter- . mined the other way,- an account would not be required. ■In..sjuch.cases-the court has often directed an.account before it decided'the point'upon - the decision'of which *95 the pi’opriety of taking the account depended. After much time consumed and much money expended in obtaining the account there would be a decree in the cause ascertaining that the account which had been ordered was wholly unnecessary. The court of appeals has discountenanced such a practice.”
I think the case before us is exactly a case in which such a practice ought to he discountenanced, especially where no account is asked by any party to the cause, hut where all parties submit their case to be determined upon the pleadings and proofs. To reopen it now, and send the case hack for an account by a commissioner, would be to encourage a mischievous practice, which has so repeatedly been discountenanced and reprobated by this court.
Upon the whole case I am of opinion that there is no error in the' decree of the corporation court of the city of Alexandria, and that the same ought to be affirmed.
The other judges concurred in the opinion of Christian, J.
Decree affirmed.